SAMUEL E. CROCKER *versus* ELIPHAZ GULLIFER ET AL.

If a bailee uses property bailed in a different manner than by the contract of bailment he stipulated to use it, such use constitutes a conversion, and trover is maintainable therefor.

Where the agreement was, that the thing bailed should be used in the service of A., and in his business, the bailee has no right to lease the property to B., to be used by him.

Where the option is with the party receiving, to pay for or return the goods received, such alternative agreement amounts to a sale; but otherwise, if, at the time of receiving, he admits the title to be in the other party, so to remain until fully paid for.

Where a sale is conditional—that no title shall pass till the vendee shall pay the price of the article sold and delivered, the vender if guilty of no laches, may reclaim the property, even from a vendee in good faith, and without further notice.

This is an action of TROVER, and is REPORTED by CUTTING, J., presiding at *Nisi Prius.*

The facts of the case fully appear in the opinion of the court.

*C. P. Brown,* counsel for the plaintiff.

*J. A. Peters,* counsel for the defendant.

APPLETON, J. On the 9th of November, 1855, the plaintiff agreed with the defendants, that Richard Moors and two other good teamsters should go into the woods, with sixteen horses belonging to the plaintiff, but then in the possession of Moors, and work for the defendants during the coming lumbering season, on certain terms and conditions specified in the contracts between the parties. The defendants being unable to lumber, as they had intended, and consequently having no use for the horses, leased the same to Fiske & Dale, to be by them employed in lumbering, for the same period of time in which they were entitled to their use. The horses continued in the service of Fiske & Dale until they were accidentally burnt, without neglect or fault on the part of any one, and this action is brought for their loss.

The plaintiff had the May previous contracted to sell the horses in dispute to the Richard Moors named in his contract with the defendants, who, when he received them into his possession, gave back a receipt, in and by which he admitted the title to the horses to be in the plaintiff, and further stipulated that they were to continue to be his property " until he is fully paid for them, both principal and interest," and after promising to employ them in his service, in hauling slate during the ensuing hauling season, he agreed at the

end of the same, "to pay said Crocker for said horses or de-
liver them to him."

To the maintenance of this action, which is trover for the
conversion by the defendants, in leasing the property to
Fiske & Dale, without authority, the counsel for the defend-
ants interpose various grounds of defence.

1. As the plaintiff is bailer and the defendant is bailee, it
is insisted that the action should have been assumpsit upon
the written contract between the parties.

Though an action of assumpsit might have been success-
fully maintained, still it does not follow that the present
form of action is misconceived. No principle of law is bet-
ter settled, than if the bailee uses the property bailed for
purposes variant from those for which, by the contract of
bailment, they were to be used, that this constitutes a con-
version, and that trover is maintainable therefor. As for in-
stance, if one hires a horse to ride to Hampden, and goes
beyond that place, or in an opposite direction, he would be
liable in trover. *Wheelock* v. *Wheelwright*, 5 Mass. R., 104.
So if the stipulation be that the thing bailed is to be em-
ployed in the service of A, and in his business, the bailee
would have no right to lease the property to another, to be
by him used. The bailer intrusts his property to the care
and custody of the person with whom he contracts for its
hire, but he confers upon him no general right of disposing
of its use or enjoyment as he may see fit.

2. As the contract between the plaintiff and Moors is in
the alternative to pay for the horses or return the same, it
is urged that this constitutes a sale to Moors, and vests the
title to the horses in him.

The general proposition, that a delivery of an article at a
fixed price, to be paid for or returned, constitutes a sale, is
not questioned. When the option is with the party receiv-
ing, to pay for or return the goods received, the uniform
current of authorities is, that such alternative agreement is a
sale.

But in the present case, there are other elements which

modify and control the general principle. Moors not merely agreed to pay for or return the horses, but at the very instant of the bailment, he admitted the title to the same to be in the plaintiff, and agreed that they should continue to be his until they should be fully paid for. It is obvious that Moors could not contest the plaintiff's title, and these defendants are certainly in no better condition.

This case is most clearly distinguishable from those which have been cited as bearing upon this point. In *Holbrook* v. *Armstrong*, 1 Fairf. R., 31, there was a parol agreement to pay for the property in dispute, or return the same at the end of two years, but it was no part of the contract that the title should be and remain in the plaintiff during that period. In *Dearborn* v. *Turner*, 16 Maine R., 17, it was held that Nason, who received the property, "having the alternative to return or pay, the property passed to him, and he was at liberty to sell;" but in that case the plaintiff had not reserved the title in himself till payment. In *Baswell* v. *Bicknall*, 17 Maine R., 344, the party receiving the article in dispute verbally agreed to pay a certain price therefor, or to return the same in a given time. "The property," remarked WESTON, C. J., "in the thing delivered passes, and the remedy of the former owner rests in contract. It is the option conceded to the party receiving which produces this effect." But the option in the present case was qualified by the special agreement that the title was to remain in the plaintiff till payment. In *Perkins* v. *Douglas*, 20 Maine R., 317, the written promise was, to return the chattel or to pay therefor, and nothing more. "Such a contract," says SHEPLEY, J., "does not reserve to the seller any right in the property for the security of the purchase money." But here that right was reserved in most clear and explicit terms. In *Southwick* v. *Smith*, 29 Maine R., 228, there were notes given for the hides, and a further agreement to return the leather made from the same, if the notes should not be paid at maturity, and the proceeds to be applied to their payment, but no language is found in the contract by which the plain-

Crocker *v.* Gullifer.

tiff reserved any ownership in the property delivered; if there had been, the decision would have been otherwise.

3. The plaintiff had the right of immediate possession for the summer, which is the season for hauling slate. His contract with the defendants described them as his, but in the possession of his servant. The sale being conditional—that no title shall pass till the vendee shall pay the price of the article sold and delivered, the vender, if guilty of no laches, may reclaim the property, even from a vendee, in good faith, and without notice. *Coggell* v. *New Haven Railroad Company*, 3 Gray R., 545. The chattel in such case is in the constructive possession of the seller, and an action may be maintained without a demand, in case of a conversion by the purchaser. *Hill* v. *Freeman*, 3 Cush. R., 257.

4. Moors had no authority to lease, either express or implied; and that the defendants so regarded it, is apparent from their telegraphic dispatch requesting leave to lease the horses to Fiske & Dale.

5. The defendants hired the horses to be used in their employ, and they had no right to transfer their control and use. The contract was specific—to be used by them.

The evidence offered was immaterial. The liability of the defendants arose when, by their consent, Fiske & Dale assumed the control of the horses leased to them. That act was a conversion, if the plaintiff deemed it expedient so to regard it. Whether they were afterwards lost by carelessness or not, is an inquiry of no concern to the plaintiff. The risk was henceforth on the defendants.

*Defendants defaulted.*

TENNEY, C. J., RICE, HATHAWAY, CUTTING and GOODENOW, J. J., concurred.