DeVoin, Respondent, vs. Michigan Lumber Company, Appellant.

*November 10 — December 1, 1885.*

*Bailment: Use of hired horses for other work than contracted for: Liability of bailee for injury: Driver employed by owner.*

Where one party hires his team and a driver paid by him to another party, to be used in a certain place or for a certain purpose, and while being used in a different place or for a different purpose the team is injured without any negligence of the driver in handling the team, the bailee is responsible for such injury. The driver is not the agent of the owner in the act of obeying the directions of the bailee at a place or in a kind of work not contemplated by the contract of hire.

APPEAL from the Circuit Court for *Marathon* County. The case is thus stated by Mr. Justice CASSODAY:

"January 1, 1883, the plaintiff resided at Rhinelander, and owned the span of horses in question and a pair of sleighs, and had a hired man to drive them, to whom he was paying $35 per month. The defendant was at the time engaged in lumbering; getting in saw-logs at two different camps, one at Rocky Run and the other at Sugar Camp.

About the time named the defendant hired of the plaintiff his said team, sleighs, and driver to haul supplies from Rhinelander to the camps named, for which the defendant agreed to pay the plaintiff $75 per month. At the same time it was agreed between them that the driver and team should be boarded and kept by the plaintiff whenever they were in Rhinelander at an agreed price, to be paid by the defendant. After being engaged for some days in hauling supplies to Sugar Camp, the defendant obtained permission from the plaintiff to have the team and driver haul logs at Rocky Run for a few days, and they were sent there for that purpose by the plaintiff. After hauling logs at that place one day the defendant's foreman of that camp directed the driver to take the team, and go and haul some hay from a place on the Tomahawk river about ten miles north of that camp, and also sent one of the defendant's men with him to show him the way and to help load the hay. On reaching the first stack, which had been partly hauled to the camp, the guide directed the driver to drive up to the next stack, which was close by the river, and in a direction where there was no road, and across water frozen over and covered with snow. In going to the second stack the driver sat upon the sled and the guide walked behind it. When the horses got upon the ice it broke through, and they were both drowned. This action is to recover their value. The verdict was for the plaintiff. From the judgment entered thereon the defendant appeals."

*H. H. Grace*, for the appellant, to the point that the driver was the agent of the plaintiff, who never parted with control of the team, and that the defendant was therefore not liable, cited Story on Agency (9th ed.), 563, 455; *Hughes v. Boyer*, 9 Watts, 563; 2 Thompson on Negligence, 892, note 12, 893, note 13.

*L. A. Pradt*, for the respondent.

CASSODAY, J.   The court stated to the jury that it was admitted, or proved by uncontradicted evidence, that at the time of the accident the team and driver " were in the employ of the defendant . . . for the purpose of hauling logs." It is now claimed that this was a controverted question of fact for the jury to determine. The only witness of the defendant on that question testified, in effect, that he, in behalf of the defendant, made the contract of hire with the plaintiff; that he hired the team and driver " to haul logs, and to haul supplies to Sugar Camp or Rocky Run, just as he was a mind to have him." It is undisputed that for the time being the team and driver had stopped hauling supplies, and had gone to Rocky Run for the express purpose of hauling logs, and had hauled logs there for one day. There is no claim, nor any testimony to support any claim, of any express contract with the plaintiff that the team should be used in hauling hay or supplies from any other place than Rhinelander. The defendant did give evidence tending to prove that, by the general custom in the vicinity, it was understood that when a team was hired to haul logs it included the right to use the same to haul a load of supplies, or a load of hay, or anything of that description. The court was very liberal in its allowance of evidence of such general custom. The plaintiff denied any knowledge of the existence of any such custom. The question whether such custom existed was fairly submitted to the jury. The verdict for the plaintiff negatived the existence of such custom, and established the fact as a verity that by the express contract of hire the team was only to be used in hauling supplies from Rhinelander, or logs at Rocky Run.

The defendant requested the court to instruct the jury, in effect, that the driver was the agent of the plaintiff; that his consent to go for the hay was the consent of the plaintiff, and hence that he could not recover; and that if the in-

DeVoin vs. Michigan Lumber Co.

jury occurred through the driver's negligence, then the plaintiff could not recover. For the refusal to give such several instructions, errors are assigned.

In a limited sense the driver was the agent of the plaintiff. He was such agent in caring for and driving the team in hauling supplies from Rhinelander and logs at Rocky Run. That included the proper feeding and handling of the team. He was only twenty-two years of age, but had some experience in driving teams. There is no claim nor evidence tending to prove that he was negligent in the act of handling the team. There was a road to the first stack. It had been cut by the guide sent with the driver. Near the first stack the road was along on the ice on the river. There was no difficulty in getting to the first stack. Between that stack and the other stack there was no road nor any broken path. It seems to have been, or at least a portion of it, right along on the river. But the water was frozen over, and the ice was covered with snow. The space between the two stacks appeared to be level snow, and there was no unusual appearance around or about the place where the accident occurred. The driver had never been there before. There is no evidence that there was any safer way or any other way to the second stack. There is no evidence that the team was not driven properly and in the way directed by the guide, who appears to have known of the *locus in quo*. The age of the guide is not given, but he was selected by the defendant's foreman for the purposes indicated. The accident did not occur by reason of any negligence in the mere driving or handling the team, but in obeying the directions given by the foreman and guide, and driving the team into a dangerous place without knowing it to be dangerous. If the driver was negligent at all, it was in obeying directions and driving out upon the ice for the first time without first testing its strength. If the guide was negligent in walking behind the sled while being driven

to the second stack, instead of going ahead of the team and testing the ice, yet, as the service in which they were then engaged, was not such as was contemplated in the contract of hire, he was not a co-employee with the driver in such a sense as to relieve the defendant from liability on account of such negligence. *Railroad Co. v. Fort*, 17 Wall. 553; *Mann v. Oriental P. W.* 11 R. I. 152; *Lalor v. C., B. & Q. R. Co.* 52 Ill. 401.

Was the driver the agent of the plaintiff in the act of obeying the directions of the defendant's foreman and guide, at a place distant from the camp, and in a kind of work not contemplated by the contract of hire? It seems to us that he was not. Of course, the driver was selected by the plaintiff to drive the team in performing the work contemplated in the contract of hire. Had the injury occurred by reason of any negligence or incompetency of the driver while engaged in the work or service so contemplated by the contract of hire, then the loss would have fallen upon the plaintiff; for, by selecting him to drive his team, he had taken upon himself the responsibility of the requisite care and competency of the person so selected in doing the work he had contracted to have him do. *Quarman v. Burnett*, 6 Mees. & W. 499; *Jones v. Mayor*, L. R. 14 Q. B. Div. 890; *Huff v. Ford*, 126 Mass. 24; *Joslin v. Grand Rapids I. Co.* 50 Mich. 516. And yet, while engaged in such contemplated work, had the team been injured solely by reason of having been driven by the careless direction of the defendant into some place of danger, not obvious to the senses and unknown to the driver, there would be no question of the defendant's liability. *Indermaur v. Dames*, L. R. 2 C. P. Div. 311. In such contemplated service the defendant was still under obligation to exercise reasonable diligence in providing a suitable place for the team to be driven; or, in other words, not to carelessly cause the team to be driven into a place of concealed danger unknown to the driver. *Ibid.;*

*Coombs v. New Bedford C. Co.* 102 Mass. 583, 584; *Swoboda v. Ward,* 40 Mich. 423; *Parkhurst v. Johnson,* 50 Mich. 70. In case of injury in such contemplated service, the mere fact that the driver was in a limited sense the agent of the plaintiff, as indicated, would not take away the liability of the defendant, under whose orders and control he was acting at the time, for negligently inducing him to drive into a place of concealed danger. *Rourke v. White M. C. Co.* L. R. 2 C. P. Div. 205.

But the case at bar is more favorable for the plaintiff than any supposed. Here the injury occurred when neither the team nor the driver were engaged in the work contemplated in the contract of hire. They were both, however, doing service for the defendant under the directions of its foreman and the guide selected by him. The team was drowned solely by reason of being driven by such direction into a place of concealed danger unknown to the driver. Had not the team at the time of the injury been accompanied and driven by the driver selected and employed by the plaintiff, there could be no question but what such diverted use of the team would have been a conversion within all the authorities. *Wheelock v. Wheelwright,* 5 Mass. 104; *Homer v. Thwing,* 3 Pick. 492; *Hall v. Corcoran,* 107 Mass. 251; *Woodman v. Hubbard,* 25 N. H. 67; *Hart v. Skinner,* 16 Vt. 138. The same rule has been applied to the unauthorized use of slaves. *Horsely v. Branch,* 1 Humph. 199; *Scruggs v. Davis,* 5 Sneed, 261; *Moseley v. Wilkinson,* 24 Ala. 411; *Fail v. McArthur,* 31 Ala. 26; *Spencer v. Pilcher,* 8 Leigh, 566. For the loss during such diversion or misuse, the defendant would have been absolutely liable, even though it occurred by reason of the fault of the horses or as a mere accident. *Lucas v. Trumbull,* 15 Gray, 306; *Perham v. Coney,* 117 Mass. 102; *Fisher v. Kyle,* 27 Mich. 454; *Lane v. Cameron,* 38 Wis. 603. Does the mere fact that the driver consented to the diversion of employment, and was

in the act of driving the team when the accident occurred, relieve the defendant from the liability which would otherwise have existed? We must answer this question in the negative. There is no claim that he participated in, or was even present at the time of making, the contract of hire; nor that he had any authority to modify that contract or make a new one. The case is quite similar in principle to *Crocker v. Gullifer*, 44 Me. 491, where one of the drivers had a conditional interest in the horses and consented to the diversion, but it was held that the defendants were liable for their value, notwithstanding they were accidentally destroyed by fire without the neglect or fault of any one.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 25 Am. Law Reg. 234, 238.—REP.

