## JOHN McDONALD v. DONALD C. McKINNON.

*Trover—Conversion of shares of stock—Personal liability of agent.*

1. A treasurer and stockholder of a corporation, to whom another stockholder, in pursuance of a contract with the company, delivers his stock to hold until a certain condition is performed by the bailor, and who, after such performance and the consent in writing of the other stockholders, refuses to deliver the stock to the bailor on demand, and falsely represents to him that it has been destroyed, is liable to the bailor in trover for its value.

2. That trover will lie for shares of stock was held in *Morton v. Preston*, 18 Mich. 60.[1]

Error to Iron. (Stone, J.) Submitted on briefs May 12, 1892   Decided June 10, 1892.

Trover. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*E. E. Osborn*, for appellant.

---

[1] See *Hubbell v. Blandy*, 87 Mich. 209.

*B. J. Brown,* for defendant, contended :

1. There was no demand or refusal. Under plaintiff's election, the conversion complained of took place when the defendant told plaintiff that the stock was burned, as testified to by plaintiff, who said, "I told McKinnon, who was treasurer of the Beta Mining Company, and who held those 8,000 shares of stock of mine, to come and look at the property, and examine to see if my contract was fulfilled, and give me my stock. I told him to come. up, and go down the shaft and measure it, if they were satisfied that I fulfilled my contract." But this amounted to neither a demand nor a refusal; citing *Zachary v. Pace,* 9 Ark. 212 (47 Amer. Dec. 744); *Fletcher v. Fletcher,* 7 N. H. 452 (28 Amer. Dec. 359).

2. If plaintiff had fully performed the contract on his part, he could not maintain an action against McKinnon until the latter had been directed to make delivery by the company, because McKinnon held the stock, not as an individual, but as treasurer of the company. The officer, and not the man, was the custodian. His possession was the possession of the company; and had his term of office ended, the possession would have passed to his successor. His refusal to deliver would not make him liable in trover; citing *Carey v. Bright,* 58 Penn. St. 70.

But, if it be assumed that the plaintiff would have become entitled to the possession of the stock upon demand upon the company, with notice of performance, and that such demand had been followed by the neglect or refusal of the company to order its delivery, with a further demand upon McKinnon for its possession, then it is possible that he could have brought replevin. I say "possible," because, even in that case, the action would properly have been laid against the company itself.

But trover cannot be maintained, because—

*a*—McKinnon was not a party to the contract, and the duty to deliver, therefore, so far as he is concerned, does not grow out of or rest upon his contract.

*b*—No common arbiter is provided for by the contract. Was the defendant bound to inspect the work, and decide, at his peril, upon its performance? Was he required to incur the expense of such inspection, and would it have bound the company? Surely not.

It is therefore respectfully submitted that the court properly directed a verdict for the defendant.

LONG, J. The court below directed verdict and judgment in favor of the defendant. Plaintiff brings error.

The facts shown upon the trial were that the defendant and his brother, Alexander, owned 40 acres of land in the Upper Peninsula, and in 1882 the plaintiff obtained an option upon it, and explored for ore, which he found in the summer of 1883. This discovery led to the formation of a corporation under the mining laws of this State, called, "The Beta Mining Company." In this company the plaintiff was the owner of 8,000 shares, the McKinnons 5,950 shares each, and a Mr. Fairchild 100 shares. The articles of association recite the conveyance to the company by the plaintiff of his option, and the execution of a lease to the company. Upon the completion of the articles of incorporation an agreement was entered into between the plaintiff and the company by which the 8,000 shares belonging to the plaintiff were placed in the hands of the defendant, as treasurer of the company, to the end that the plaintiff should continue his explorations until he should "find and sink into the ore a shaft at least 20 feet deep in good marketable ore, and drift across and through the same from foot to hanging wall." When such deposit was found, the stock of plaintiff, so held, was upon demand to be given to him.

Upon the trial plaintiff's testimony showed that in the summer of 1886, after an expenditure of over $8,000 of his own money, he discovered marketable ore, sunk the shaft to the depth required by the contract, and drifted across it. At this time the entire 8,000 shares of his stock were in the hands of the defendant. As soon as the work was completed entitling him to his stock, plaintiff advised defendant of the fact, and called for his stock. Defendant answered that the stock was burned, but that

he would give the plaintiff an option on his stock at six dollars a share, which he did, and told him to go ahead and mine.  Plaintiff commenced mining, and continued until the fall of 1887, when he quit, having lost during that time upwards of $6,000.  From the time marketable ore was found, and up to the time when plaintiff ceased to operate the mine, plaintiff made several efforts to obtain from the defendant his stock, and attempted to get a meeting of the company for the purpose of having new stock issued in place of the stock which defendant claimed had been burned, but without success.  Plaintiff subsequently ascertained that the stock had not been burned or destroyed, but during all the time was in the hands of the defendant. . The other stockholders had assented in writing to the delivery of the stock to the plaintiff.  It was shown that at the time the demand was made for it in 1886 the stock was worth five dollars per share, and that since the mine had ceased to be operated it was of little or no value.

This is an action of trover to recover from the defendant the value of the stock.  The defense to the action was that the defendant held the stock as treasurer of the company, under a contract made with the company, and that the demand should have been made upon the company instead of upon McKinnon, and that the company, and not McKinnon, under the circumstances here stated, was liable, if any liability existed.

We think the court below was in error in directing the verdict in favor of the defendant.  The claim made against the defendant was that he was guilty of wrong and deceit in withholding the stock when demand was made upon him for it.  It is true that McKinnon, as agent of the company, could not be held liable for acts of negligence of the company itself; but he is charged

here with fraud and deceit in representing that the stock
had been burned, and refusing to deliver it up on demand
after it had been earned under the contract, the other
stockholders having consented to its delivery. For these
acts the defendant, and not the company, would be the
responsible party.

It is contended, again, that trover is not the appro-
priate remedy, and that there was not a sufficient demand
and refusal to constitute a conversion. There was some
evidence in the case tending to show a conversion by the
defendant; at least, it became a question for the jury to
determine. *Daggett v. Davis,* 53 Mich. 38. That trover
will lie for shares of stock was held in *Morton v. Preston,*
18 Mich. 60.

The verdict and judgment must be reversed, with costs,
and a new trial ordered.

The other Justices concurred.