SCHULTZ, Respondent, vs. WEBER, Appellant.

*November 8—December 5, 1950.*

For the appellant there was a brief by *Doar & Knowles,* and oral argument by *John Doar,* all of New Richmond.

The cause was submitted for the respondent on the brief of *Coe & Cameron* of Rice Lake.

MARTIN, J.  In February, 1949, the defendant Weber contracted with the United States army to furnish to them certain men and equipment for the removal of snow in the state of North Dakota.  To aid him in the performance of his contract with the army the defendant Weber leased from the plaintiff Schultz, among other equipment, one diesel-powered caterpillar tractor with bulldozer which is the subject of this action, together with the necessary operators stated in Exhibit 2 to be two operators, but in the actual performance of the contract apparently three.

The material part of the lease (Exhibit 2), dated February 15, 1949, reads as follows:

"I, the lessee, William Schultz and Bob Volk, agree to lease to the lessor, Weber Construction Company (1) TD–18 cat and dozer with (2) operators, fuel, and repairs at the rate of $9.50 per hour when operating and $6 per hour in case of being stalled because of snowstorm."

On the night of February 18, 1949, another cat owned by the defendant Weber and operated by his brother Jim was attempting to negotiate a hill near Center, North Dakota, in

an effort to by-pass a bridge. The natives informed the army people that the bridge was unsafe for a caterpillar tractor and, accordingly, the army instructed Weber not to take his cats across the bridge. In attempting to negotiate the hill, the Weber cat slid down the hill and overturned, resulting in the death of the operator.

The next day the defendant was informed by the army officer in charge to get the equipment in operation in whatever way he could. In an effort to right his equipment, Weber used plaintiff's cat for that purpose.

The cats had been operating on a twenty-four-hour-a-day basis and an operator by the name of Filmore, who had been furnished by the plaintiff to the defendant pursuant to the contract, had completed his night shift. At the same time the relief operator, furnished under the contract, reported for work, and in the performance of his work started to grease the cat which he was to drive.

Defendant Weber hollered to the relief operator Buergi to take the cat up on the hill. Buergi responded "I won't take it over." Thereupon Weber hollered "Ain't there a cat skinner that can bring that damn cat over?" In response to this direction Filmore, the driver who had been relieved, got upon the cat and drove across the creek to the bottom of the hill, which was about five hundred feet high. He was directed by Weber to drive the cat up the hill about twenty-five feet to the right of where the Weber cat had met with the fatal accident the night before. Filmore refused. Thereupon Weber walked away from the cat and conferred with Buergi and St. Martin, one of Weber's drivers, and directed Filmore to proceed up the hill by a different course. No one knew the condition at the top of the hill where the accident occurred.

Filmore obeyed the last direction of Weber and started to negotiate the hill. Weber, Buergi, and St. Martin jumped upon the side of the cat for the purpose of riding to the top of the hill. When they were about twenty-five or thirty feet from the top of the hill, they came upon an area of frozen

ground swept clean of snow. By reason of the slipperiness of the hill, the cat slid around, slid to the bottom of the hill, resulting in the damage claimed. When the cat started to slide, Weber and the other men jumped from the tractor, but Filmore, the operator, unsuccessfully attempted to ride it and jumped off after it had slid down the hill approximately one hundred feet.

Filmore had driven equipment of this type since 1934. His experience included skidding logs, plowing roads, and working on state highways. He had owned his own caterpillar equipment for eleven years. He had plowed snow for six years. All parties agree that his operation of the equipment was efficient and proper. Weber testified that Filmore was paying attention to the business of driving the caterpillar, that he drove in a prudent manner, and at no time did he object to the place where Filmore drove the cat nor to the manner in which he was driving.

Both parties agreed that the questions submitted to the jury covered the issues involved in this action. There is sufficient evidence to sustain the jury's finding that Weber was negligent and did not exercise due care in sending the cat into this situation.

In *DeVoin v. Michigan Lumber Co.* (1885), 64 Wis. 616, 620, 25 N. W. 552, the plaintiff had furnished to the defendant a team and driver and the defendant furnished the foreman or guide, who, instead of going ahead of the team to test the ice, directed the plaintiff's driver into a place of danger and then walked behind instead of in front of the team. The court held the defendant liable and stated:

"In such contemplated service the defendant was still under obligation to exercise reasonable diligence in providing a suitable place for the team to be driven; or, in other words, not to carelessly cause the team to be driven into a place of concealed danger unknown to the driver. [Cases cited.] In case of injury in such contemplated service, the mere fact that the driver was in a limited sense the agent of the plaintiff, as

indicated, would not take away the liability of the defendant, under whose orders and control he was acting at the time, for negligently inducing him to drive into a place of concealed danger." See also *Stacy v. Knickerbocker Ice Co.* (1893), 84 Wis. 614, 54 N. W. 1091.

Appellant has asserted an error was made in the admission of testimony of one William Frank. We find no error because timely objection was made and the court ordered the objectionable answers stricken.

Under the circumstances, plaintiff was entitled to recover damages to the cat. We are of the opinion that there is credible evidence to sustain the finding of the jury that the plaintiff suffered $1,100 damages due to loss of use of the cat. The equipment was disabled for ten days, seven of which were required for its repair and three of which were required to get the equipment back upon the highway. Plaintiff testified that he was claiming damages for the seven days that it took to repair the cat. He had been paid the stand-by rate for the three days getting out of the river bottom. The evidence shows that the equipment was to operate twenty-four hours a day, that the contract price was $9.50 an hour, that the operator received $1.75 an hour. This gives an income from the equipment of $7.75 minus the cost of the fuel.

The verdict of the jury is amply sustained by the evidence, and the judgment rendered is hereby affirmed.

*By the Court.*—Judgment affirmed.