STACY, Appellant, vs. KNICKERBOCKER ICE COMPANY, Respondent.

*March 22 — April 11, 1893.*

*Negligence: Horses drowned while working on ice.*

1. Horses hired to an ice company to work on the ice became frightened and uncontrollable. While rearing and plunging and moving away from the place where they became frightened, they reached a place from which the ice had recently been cut and over which thin ice had formed. A fall of snow had rendered the line between the thick ice and thin ice invisible, and no fence had been erected. The horses broke through the thin ice into deep water, carrying the driver with them. The driver was rescued, but the horses went under the ice and were drowned. *Held,* that the company was not liable for the loss of the horses because it had failed either to indicate the location of the thin ice by such a fence as is described in sec. 4395, S. & B. Ann. Stats., or to notify the driver of the location thereof, or because it had no ropes or appliances at hand to get the horses out of the water,— for the reason that such precautions, had they been taken, would not have prevented the loss.

[2. Whether, inasmuch as the company was actually engaged in removing the ice adjoining the place covered by the thin ice, sec. 4395, S. & B. Ann. Stats., has any application to the case, not determined.]

APPEAL from the Circuit Court for *Jefferson* County.

In February, 1891, the defendant ice company was engaged in cutting and removing into ice-houses the ice formed in Fowler lake, in Oconomowoc, and hired of plaintiff a

span of horses for use in that business. The parties agreed that the horses should be driven by one Clifford, then in the service of the ice company in the same business. By direction of the foreman or manager of the ice company, Clifford obtained the horses from the plaintiff and drove them upon the ice for the purpose of using them in scraping the snow from the surface of the ice. As he was hitching the horses to a scraper, assisted by one Newton, another employee of the ice company, they became frightened, probably by the noise of other scrapers then being used in the vicinity, and attempted to run in a direction different from that in which they would have been driven had they been used on the scraper as intended. Clifford and Newton were at the heads of the horses trying to hold them, and made vigorous and persistent efforts to do so, but were unable to control them. The horses reared and plunged, moving away from the place whence they started, and after moving from 100 to 200 feet, and being entirely uncontrollable, they reached a place from which the ice had recently been removed, over which two or three inches of ice had again formed. The whole surface of the lake was covered by a recent fall of snow, so that the line between such thin ice and the adjoining thick ice was not visible, and no fence, guards, or other signals had been put there to indicate the place from which the ice had been removed. The horses broke through the thin ice, and both were drowned.

This action is to recover the value of such horses. At the close of the testimony, which conclusively established the facts above stated, the court directed a verdict for the ice company. A motion by plaintiff for a new trial was denied, and judgment for defendant entered pursuant to the verdict thus directed. Plaintiff appeals from such judgment.

*Harlow Pease*, for the appellant.

*Warham Parks*, for the respondent.

LYON, C. J.   The contract between the parties was one of bailment, the defendant ice company being the bailee for hire of plaintiff's horses.   There was but one express stipulation in the contract, which was that the horses should be driven by Clifford.   This stipulation was performed by the ice company.   In all other respects the conditions and obligations of the contract were those, and those only, which the law implies.   One of these is that a bailee for hire is only liable for the consequences of a want of ordinary care of the property bailed.   If such property be injured or lost while in his possession, without negligence or fault on his part, the loss falls upon the owner, not the bailee.   All this is elementary in the law of bailment.

It is maintained that the ice company was negligent in three particulars, which negligence caused or contributed to the loss of the horses.   These are: (1) It failed to indicate the location of the thin ice by a fence, as required by sec. 4395, S. & B. Ann. Stats.; (2) it failed to notify Clifford of the location of the thin ice; and (3) it failed to have ropes and appliances at the place of the accident to be used in getting the horses out of the water before they drowned.   The testimony has been carefully examined, and we think it demonstrates that, had all these precautions been taken, they would not have saved the horses.

·1. They were uncontrollable, were rearing and plunging, and getting away from the place where they became frightened as rapidly as they could.   The fence of the statute (which is a single fence board nailed on two by four inch posts, three and one-half feet from the surface upon which the posts stand) would have been but gossamer before those powerful horses, frantic with fright, upon whom two strong men could make no impression.   Besides, it is very doubtful whether the statute has any application to this case, inasmuch as the employees of the ice company

were then actually engaged in removing the ice adjoining the place covered by the thin ice, and it would seem impracticable to place and keep a fence around the margin of the opening before the work there should cease. However, we abstain from giving definite construction to this statute.

2. Exact knowledge by Clifford of the location of the thin ice is not a possible factor in the loss of the horses, for, had he been fully advised where the thin ice commenced, he was powerless to prevent the horses going upon it. He went into the water with them, and was rescued. Were he suing the plaintiff for negligence, we would have a case where the fact that he had not such knowledge might be material, but we do not regard it material here.

3. We are aware of no rule of law which required the ice company to have, at the place and time of the accident, ropes and appliances suitable for use in hauling the horses out of the water. Moreover, had such ropes and appliances been there at the time, the proof is quite conclusive that they would have been of no avail. The horses fell into deep water and went under the ice, and were undoubtedly dead when the bystanders had succeeded in rescuing Clifford, who came near being drowned.

It is perfectly obvious that the horses would not have been drowned had they not become frightened and uncontrollable. For such fright no blame attaches to the ice company. Had Clifford been able to keep the horses under control, he would not have been required to go upon or dangerously near the thin ice, for the scraping he was sent to do, and which the horses were hired to do, was at a point safely distant from the thin ice, and, as we understand the testimony, the distance therefrom would have constantly increased as the work progressed. Upon a careful examination of the case we are unable to find any testimony which would warrant a finding that the ice company

was guilty of any negligence whatever which caused or contributed to the loss of plaintiff's horses.

*By the Court.* — The judgment of the circuit court is affirmed.