KASSELA, Appellant, vs. HOSETH and another, Respondents.

*December 6, 1934—January 8, 1935.*

For the appellant there was a brief by *Robert E. Curran* of Superior and *Wilcox, Wilcox & Sullivan* of Eau Claire, and oral argument by *Roy P. Wilcox*.

For the respondent Hoseth there was a brief by *J. W. Carow* of Ladysmith, attorney, and *Aschenbrenner & Petersen* of Milwaukee, and oral argument by *S. A. Aschenbrenner*.

*O. J. Falge* of Ladysmith, for the respondent Brucker.

FRITZ, J. Plaintiff appealed from a judgment for the recovery from the defendant Hoseth of eighty per cent of the amount assessed as the damages sustained by plaintiff as the result of negligence of the defendant Hoseth, as well as of the plaintiff. That judgment also dismissed plaintiff's complaint against the defendant Brucker, and plaintiff ap-

pealed because he contends that the court erred in dismissing his complaint against Brucker, and in holding that there was negligence on his part which contributed to his injury, and that because of that negligence his damages, as assessed by the jury, were to be reduced by twenty per cent, which the jury found to be the proportion of contributing negligence attributable to plaintiff.

When plaintiff was injured on August 24, 1932, he was employed by Rusk county to operate a motorized road-grading machine on a state highway, which had a twenty-eight feet wide oiled-gravel surfaced roadway. Ahead of the grader blade on that vehicle there were scarifier teeth, which extended downward so as to break up the surface of the roadway. Shortly before the accident, as plaintiff was driving the grader westward on the south, which was his left, side of the roadway, he discovered that the teeth were not operating properly because the lower ends thereof were dull. Thereupon he stopped the grader on the south half of the roadway and got down under it to reverse the teeth, so as to use the other end thereof, which was sharper. That operation would have required from ten to fifteen minutes, but before he completed it, he was injured as the result of a collision between Hoseth's motor-truck and the grader. Hoseth, driving eastward on the south half of the roadway, had seen the grader as he approached, but he claims that, as he was about to pass it, dust or a small pebble, thrown up by a passing west-bound automobile and striking his eye, caused him to close both eyes and take his hand off the steering wheel.

The jury found that Hoseth's negligence as to speed and the manner in which he was driving was a cause of the plaintiff's injury, and that the plaintiff was not negligent in going under the grader, into a place of danger, where he might be injured. However, the court, in directing certain answers to some of the questions in the verdict, held that plaintiff was

negligent, as a matter of law, in stopping the grader in a traveled portion of the highway, and in permitting it to remain there while making the changes and adjustments in the teeth; and that that negligence on plaintiff's part was a cause of his injury. In respect to those findings, as directed by the court, the jury found that twenty per cent of the total negligence, which caused plaintiff's injury, was attributable to plaintiff, and because of that finding the court, in ultimately ordering judgment for plaintiff against Hoseth, reduced plaintiff's recovery to eighty per cent of the assessed damages.

As is disclosed by instructions given to the jury, the court fully recognized that, under sec. 85.18 (12), Stats., vehicles actually engaged in maintaining the highway are permitted to operate on the left-hand side of the highway when they are designated according to the standard method of marking such vehicles, as promulgated by the state highway commission; and that therefore, while the road-grader was traveling and operating on the highway, the plaintiff was not negligent in having it on the left-hand side of the road. But the court also instructed that,—

"independent of statute it was his [plaintiff's] duty to be careful and so handle the grader that he had due regard for the rights of others and not to create any unnecessarily dangerous situation and to exercise ordinary care. He should obey the statute and then he should exercise ordinary care independent of statute;"

and, in that connection, the court directed the finding that the plaintiff was guilty of contributory negligence in stopping and permitting the grader to remain on the traveled portion of the highway while changing the teeth. Those directed findings by the court are challenged by plaintiff on the ground that the record presents no evidence to sustain those findings. The record does disclose, without any contradiction or conflict in the evidence, that at the time of the accident plaintiff was voluntarily stopping and permitting the

grader to stand on the roadway of a public highway, in an agricultural district, in order to change the scarifier teeth,—which was to require from ten to fifteen minutes,—although the defective condition of the teeth did not in any manner affect the motor and propelling mechanism of the vehicle. It was not disabled in any respect which interfered with its being readily moved on its power off the roadway, onto one of the nearby private farm driveways, in that locality. In thus permitting the grader to stand on the highway when it was practical to move and leave it off the roadway, plaintiff was negligent, as a matter of law, in that he clearly violated that portion of sec. 85.19 (1), Stats., which provides that—

"No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway of such highway. . . ."

Under that provision, the parking, stopping, or leaving of a vehicle on the roadway of a highway, outside of a business or residence district, is prohibited whenever it is practical to park, stop, or leave such vehicle standing off such roadway. As the only issue in that respect, under that provision, is whether it was practical to park, stop, or leave the grader stand off the roadway, the mere fact that it may have been inconvenient or less advantageous, in point of saving time, or otherwise, to move the vehicle off the roadway, affords no excuse for failing to avoid a condition which obviously was considered such a source of danger to the traveling public that it was expressly prohibited by that safety statute. The necessity for avoiding such a menace is emphasized by the fact that it is further provided in sec. 85.19 (1), Stats., that even when it is not practical to park, stop, or leave a vehicle off of such roadway, it shall nevertheless in no event be parked, stopped, or left upon any highway,—

"unless a clear and unobstructed width of no less than fifteen feet upon the roadway of such highway opposite such

standing vehicle shall be left for the free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction along such highway."

The only provision in sec. 85.19, Stats., which recognizes any legal excuse for leaving a vehicle standing on the roadway of a highway is in sub. (8), which provides that the provisions of sec. 85.19, Stats.,—

"shall not apply to the operator of any vehicle which is disabled while on the highway in such a manner or to such extent that it is impossible to avoid stopping or temporarily leaving such vehicle in such position."

In the case at bar, that sub. (8) of sec. 85.19, Stats., is, however, inapplicable because the failure of the scarifier teeth to function properly did not disable the grader, in any manner or to any extent, so that it had become "impossible to avoid stopping or temporarily leaving" it on the roadway. Consequently, the stopping and leaving of the grader on the roadway, for the sole purpose of reversing the teeth, even though that operation required but ten or fifteen minutes, did not render the inhibition in sub. (1) of sec. 85.19, Stats., inapplicable, in view of sub. (8) of sec. 85.19, Stats. On the other hand, the provision in sec. 85.12 (5), Stats., that statutes regulating the movement, parking, and standing of vehicles are not applicable—

"to authorized emergency vehicles while the operator of such vehicle is operating the same in an emergency in the necessary performance of public duties,"

is not applicable here because the grader was not an emergency vehicle, and the reversing of the teeth was not the operation of such a vehicle in such an emergency as must exist in order to entitle the operator thereof to exemption under that provision. Likewise inapplicable is sec. 85.18 (12), Stats., which permits vehicles actually engaged in maintaining the highway to operate on the left-hand side of the highway when designated as therein provided.

That section permitted plaintiff to operate the grader on the left-hand side of the highway, but the exemption does not extend to the acts of parking, stopping, or leaving a vehicle stand on the roadway, which are expressly covered and regulated by other provisions in the statutes. On the other hand, as the grader was not disabled in such manner that it was impossible to avoid temporarily leaving it off the roadway, and as it was practical to stop and leave it off the roadway, the provision in sec. 85.19 (1), Stats., which is quoted above, and which is to the effect that in no event shall the vehicle be left on the highway unless a clear and unobstructed width of at least fifteen feet, upon the roadway, is left for the passage of other vehicles, is wholly immaterial. That provision would be of consequence if the facts had been such that it would not have been practical to park, stop, or leave the grader off the roadway.

It follows that the court rightly concluded that the plaintiff was negligent, as a matter of law, in leaving the grader standing on the roadway. This court has held that negligence in leaving a vehicle standing on the traveled portion of a highway may be the proximate cause of injuries sustained as a result of another vehicle running into the standing vehicle, even though there remained sufficient clearance for the passage of the other vehicles, and negligence in the operation thereof was also a cause of the collision, *Felix v. Soderberg,* 207 Wis. 76, 240 N. W. 836; and that voluntarily leaving a vehicle stand on the street, so as to project over street railway tracks in violation of a city ordinance, constitutes, as a matter of law, negligence which is a contributing cause of damage to the vehicle as the result of an electric street-car colliding with it, although negligence on the part of the motorman was also a cause of that collision. *Wisconsin Ice & Coal Co. v. Chicago, N. S. & M. R. R.* 177 Wis. 427, 188 N. W. 482. So, in the case at bar, plaintiff's violation of the statute by voluntarily leaving the grader standing on the south half of the roadway, could, as a matter of law,

rightly be held to be a contributing cause of his injury, although Hoseth's negligence in colliding with the grader was also a cause of plaintiff's injury.

Plaintiff also assigns as error the court's ruling that the plaintiff was not entitled to recover from the defendant Brucker, as the employer of Hoseth, for the damages sustained by plaintiff as the result of Hoseth's negligence in operating the truck. Plaintiff contends that Brucker retained sufficient control of the details of the work which Hoseth was engaged in doing when the collision occurred to render Brucker liable for Hoseth's negligence under the doctrine of *respondeat superior*.

The evidence establishes that under a written contract between Hoseth and Brucker, which designated the latter as "Dealer," who "hires and retains" the former as a "Salesman," Hoseth was "to perform sales work" for Brucker and to work on a purely commission basis, in the sale of commodities in which Brucker dealt; that Hoseth furnished, maintained, and repaired his own truck; that Hoseth procured and paid for automobile liability insurance, indemnifying him as well as Brucker, who had possession of the policy; that Brucker kept Hoseth supplied with a stock of merchandise, which, until sold by Hoseth, remained the property of Brucker, but which Hoseth transported in his truck as he traveled about in specified territory for the purpose of selling and delivering to retail dealers at prices fixed by Brucker; that Hoseth paid the premiums on policies for fire and theft insurance on that stock, which were payable to Brucker; that Hoseth forwarded sales reports showing his sales, for which he remitted daily, and that he was not to extend credit unless approved by Brucker; that he returned weekly to Brucker's place of business to replenish the stock which he carried; and that Brucker was then entitled to check the stock and require Hoseth to pay for any shortages. Hoseth had also agreed that he would sell or deal in only Brucker's merchandise; that

he would endeavor to collect, as a matter of courtesy and without any compensation therefor, any delinquent accounts authorized by Brucker; that the customers and territory covered by Hoseth were at all times the property of Brucker; and that at the termination of his contract he would not cover that territory to sell the same class of merchandise, or otherwise compete therein with Brucker. Hoseth traveled about in the specified territory without any directions from Brucker as to where he was to go from day to day. Hoseth's truck was licensed in his name, but it bore the sign "St. Paul Electric Lamp Co.," under which Brucker did business. When Hoseth quit on October 1, 1932, he transferred the truck to Brucker, who held a chattel mortgage on it, under which no instalments had been paid. On the day of the collision Hoseth was driving in new territory. At Barron he had tried to collect an account for Brucker, and was en route to Ladysmith when the accident occurred.

Although Hoseth's operations were conducted in territory specified by Brucker, the latter did not direct or control where, when, or in what manner Hoseth was to drive or to sell Brucker's merchandise. Hoseth was operating his own truck, at his own expense, and on his own time. Excepting that he had to report and remit daily in respect to his sales and collections, and had to return weekly to St. Paul to replenish his stock of merchandise, and to enable Brucker to check the balance on hand, Hoseth was free to do as he saw fit, without any control on the part of Brucker as to the manner in which the details of his work were to be performed. Consequently, under the decisions in *James v. Tobin-Sutton Co.* 182 Wis. 36, 195 N. W. 848; *Kruse v. Weigand,* 204 Wis. 195, 235 N. W. 426; and *Henry Haertel Service, Inc., v. Industrial Comm.* 211 Wis. 455, 248 N. W. 430, the relationship which existed between Brucker and Hoseth was that of employer and independent contractor, and the court rightly concluded that the doctrine of *respondeat superior* was not

applicable so as to render Brucker liable to plaintiff for the consequences of Hoseth's negligence in colliding with the grader.

*By the Court.*—Judgment affirmed.

NELSON, J. (*dissenting*). I respectfully dissent from so much of the decision as holds that the plaintiff was guilty of contributory negligence as a matter of law in stopping the grader upon the highway.

Sec. 85.18 (12) provides:

"*Highway maintenance vehicles.* Vehicles actually engaged in maintaining the highway are permitted to operate on the left hand side of the highway when they are designated according to the standard method of marking such vehicles as promulgated by the state highway commission."

The grader clearly was a highway maintenance vehicle. It was actually engaged in maintaining the highway upon which it was stopped. It was equipped with red flags and was undisputedly "designated according to the standard method of marking such vehicles." It was permitted by law to operate on the left-hand side of the highway. The court, however, holds that because the grader was stopped on the highway at the time of the collision it was not being operated on the highway and was subject to the provisions of sec. 85.19 (1) which, in part, provides:

"No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway of such highway;"

and that one in charge of a highway maintenance vehicle may not stop it upon the highway without being guilty of negligence as a matter of law.

The language, "operate on the left-hand side of the highway," reasonably construed in connection with the obvious purpose of sec. 85.18 (12), is, in my opinion, sufficiently broad to include not only movements of the vehicle along

the left-hand side of the highway, but also such stops as are reasonably necessary and incidental to the performance of the work in which it is engaged. The words "operate," "operated," or "being operated," found in similar statutes relating to automobiles, are broad enough to include not only those which are in a state of motion produced by the mechanism of the vehicle, but also ordinary stops upon the highway. See *Lima Used Car Exchange Co. v. Hemperly,* 120 Ohio St. 400, 166 N. W. 364; *Hand v. Frazer,* 139 Misc. 446, 248 N. Y. Supp. 557; *Stewart v. Jeffries,* 224 Mo. App. 1050, 34 S. W. (2d) 560; *Scheppmann v. Swennes,* 172 Minn. 493, 215 N. W. 861; *Hardware Mutual Casualty Co. v. Union Transfer & Storage Co.* 205 Ky. 651, 266 S. W. 362, and numerous cases cited therein. All of these cases, and many others that might be cited, support the view that the word "operate," reasonably construed, includes such reasonable stops as are necessary or incidental to the use of a vehicle upon the highways.

I cannot concur in the view that the legislature intended to permit a highway maintenance vehicle, actually engaged in maintaining the highways, to be moved along the left-hand side of the highway, but did not intend to allow it to be stopped temporarily for purposes clearly incidental to the work it is performing. If it is reasonably necessary to stop such a vehicle for some adjustment, must it first be driven into the ditch or to some farmer's road or yard before it lawfully may be stopped? Under the decision of the court it would seem that that must be done if the operator thereof would be free from negligence.

It is my opinion that the legislature intended by the words "to operate on the left-hand side of the highway" to authorize highway maintenance vehicles to make such temporary and reasonable stops on the highway as are incidental to the work in which it is engaged, and that the plaintiff was in no respect negligent.