LIEBENSTEIN, Administratrix, Respondent, vs. EISELE and another, Appellants.

*February 6—March 7, 1939.*

For the appellants there was a brief by *J. L. Schlatterer* of Milwaukee, and *Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Ray B. Graves*.

For the respondent there was a brief by *Hugh W. Goggins* of Wisconsin Rapids and *Herman C. Runge* of Sheboygan, and oral argument by *Mr. Goggins*.

MARTIN, J.    State Trunk Highway No. 13 runs in an easterly and westerly direction.    Said highway has a concrete surface sixteen feet wide, with a six-foot shoulder on each side.    On the day in question, the shoulders were plowed out so there was an actual width, including the shoulders, of twenty-eight feet.    It appears that this entire surface was covered by ice, rendering the highway very slippery.    There was nothing to obstruct a person's view in either direction from the point where the collision occurred.    At the time in question, Mr. Liebenstein was operating and driving a 1935 Dodge, one and one-half ton platform truck, equipped with dual wheels, with dual chain equipment for the wheels, in an easterly direction, going toward his home.    Official sunset on January 8, 1937, was 4:50 p. m.    The jury found that the accident occurred at 4:55 p. m.    It appears that at about 4 p. m., Mr. Liebenstein stopped at a garage at Pittsville

where he equipped and reinstalled the chains on the dual wheels of the truck. He was accompanied by his daughter, Jean. When he got out on the highway, about one mile east of Pittsville, the daughter heard a banging on the truck as of chains hitting, whereupon Mr. Liebenstein stopped his truck on the right-hand side of the highway, standing partly on the shoulder and the concrete surface. Mr. Liebenstein got out of the cab from the left side, walked around in front of the truck and to the rear on the south side of the truck. There is testimony that the deceased was standing immediately to the rear of his truck shortly before the impact in which he was injured. The defendant, Eisele, was driving his car in an easterly direction following the truck. He was accompanied by one Carl Holt. When Eisele first observed the truck ahead he thought it was moving slowly. He testified that he observed the truck when about a block or a little more away; that he immediately released his gas feed to slow down. As he proceeded on and had reached the point where he would ordinarily turn out to pass the truck, he observed a car approaching from the opposite direction. He testified that he applied his brakes gently for the purpose of slowing his car down to permit the oncoming car to pass; that when he applied his brakes, his car skidded, making a turn to the left, sort of half circle. The rear end of Eisele's automobile came in collision with the left rear end of the truck. Approximately at the time of the collision the automobile approaching from the east passed in safety. Immediately after the collision Eisele's car came to a stop immediately back of the truck, facing in the opposite direction (west). There is some testimony that the impact drove the truck a distance of fifty-six feet from the point of impact. Eisele testified that the truck was parked on the roadway in his travel lane without lights. The truck was equipped with headlights and also rear reflectors. There is testimony on the part of the plaintiff to the effect that the defendant,

Eisele, approached the truck at a speed estimated at between thirty and forty miles per hour. Eisele testified that when he was about two hundred feet away from the truck he observed it was stopped; that he was then traveling at a speed of thirty miles per hour; that he had reduced his speed to twenty miles per hour before his car went into a skid. The width of the platform on the truck was seven feet six inches. The truck was not disabled. The stop was made apparently for the purpose of repairing a rear tire chain. About fifty feet from the place where the truck stood there was a driveway on the south side of the concrete leading into a farmyard. This driveway was of a width to permit the parking of the truck entirely off the traveled portion of the highway.

The appellants make the following assignment of errors:

(1) The verdict as to appellant Eisele's negligence in respect to speed, lookout, and control was not supported by the evidence.

(2) The verdict as to the nonnegligence of respondent's decedent in parking his truck is contrary to the law and evidence.

(3) The court erred in instructing the jury that Liebenstein had no right to park his truck in the roadway to the Miller farm.

Appellants contend that there was no evidence that justified the submission of any question as to the negligence of the defendant, Eisele, and in this connection argue that the accident occurred because the Eisele car got out of control due to a slight application of the brakes while being driven on a slippery road; that the skidding was not due to speed; that there is no showing that the skidding would not have occurred had Eisele been driving at the rate of fifteen miles per hour or less, and in this connection appellants contend that lack of control is not actionable unless it results from

some negligent act or omission. In support of their contention appellants cite *Sullivan v. Lutz,* 181 Wis. 61, 64, 194 N. W. 25; *Linden v. Miller,* 172 Wis. 20, 22, 177 N. W. 909.

In *Linden v. Miller, supra,* the court said (p. 22):

"Skidding may occur without fault, and when it does occur it may likewise continue without fault for a considerable space and time. It means partial or complete loss of control of the car under circumstances not necessarily implying negligence. Hence plaintiff's claim that the doctrine of *res ipsa loquitur* applies to the present situation is not well founded. In order to make the doctrine of *res ipsa loquitur* apply it must be held that skidding itself implies negligence. This it does not do. It is a well-known physical fact that cars may skid on greasy or slippery roads without fault either on account of the manner of handling the car or on account of its being there. No negligence as a matter of law can be charged to the fact that defendant ran his car on Prospect avenue that day on a snowy and slippery roadway."

However, it appears that in the above case, defendant's car was being driven at a rate of from ten to fifteen miles an hour at the time it began to skid; that when it came upon an icy spot in the highway, the rear end of the car began to skid to the west; that defendant tried in vain to turn the front end to the west, and almost immediately his car skidded diagonally across the street striking plaintiff's car, thus inflicting the injuries complained of. The special verdict was in favor of the defendant, and from a judgment in defendant's favor, plaintiff appealed. In *Sullivan v. Lutz, supra,* one of the issues was the defendant's loss of control of his car, resulting from its skidding. The court said (p. 64):

"Having lost control of the car, the defendant was not responsible for what happened thereafter unless he was guilty of negligence in its management, which negligence resulted in the loss of control."

In this case the court held that the question of whether or not defendant was negligent was clearly for the jury.

In the instant case there was sufficient evidence to take the case to the jury as to the negligence of the defendant, Eisele, as to speed, lookout, and control. Eisele knew that he was driving upon an icy slippery surface. He had driven upon such icy slippery surface for a considerable distance. The testimony shows that he was an experienced driver, no doubt aware of the tendency of cars to skid upon an icy surface. He observed the truck when he was a block or more away. He did not see the headlights of the car approaching from the east which was upon the opposite side of the highway until he turned out to pass the truck. In an effort to turn back to his right side of the highway he applied the brakes and his car immediately commenced to skid. As to lookout, the jury had the right to find that if he had maintained a proper lookout, he could have seen the approach of the oncoming car. The jury also had the right to find that in the exercise of ordinary care he could have brought his car to a stop before attempting to turn out to pass the truck. The jury likewise had the right to find negligence as to speed in view of the slippery condition of the highway. We think the jury had a right to conclude that defendant was negligent in the management of his car, and that such negligence resulted in the loss of control. We cannot disturb the verdict as to defendant's negligence.

The second and third assignments may be considered together. The jury found that Liebenstein was not negligent in the manner in which he parked his truck upon the highway. Appellants contend that he was negligent as a matter of law. Sec. 85.19 (1), Stats., provides:

"(1) *Parking on highway.* No person shall park, *stop,* or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence

district when it is practical to park, *stop* or leave such vehicle standing off the roadway of such highway, provided that in no event shall any person park, *stop* or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of no less than fifteen feet upon the roadway of such highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction along such highway."

In *Kassela v. Hoseth,* 217 Wis. 115, 258 N. W. 340, the court held that the operator of a highway grader, which was struck by a truck, was negligent as a matter of law under sec. 85.19 (1), Stats., in permitting the grader to stand on the roadway while changing the scarifier teeth which would take from ten to fifteen minutes when it was practical to move the grader off the roadway. The court said at page 118:

"The record does disclose, without any contradiction or conflict in the evidence, that at the time of the accident plaintiff was voluntarily stopping and permitting the grader to stand on the roadway of a public highway, in an agricultural district, in order to change the scarifier teeth,—which was to require from ten to fifteen minutes,—although the defective condition of the teeth did not in any manner affect the motor and propelling mechanism of the vehicle. It was not disabled in any respect which interfered with its being readily moved on its power off the roadway, onto one of the nearby private farm driveways, in that locality. In thus permitting the grader *to stand on the highway when it was practical to move and leave it off the roadway, plaintiff was negligent, as a matter of law,* in that he clearly violated that portion of sec. 85.19 (1), Stats., which provides that 'no person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway of such highway. . . .' "

The court further said at page 120:

"The only provision in sec. 85.19, Stats., which recognizes any legal excuse for leaving a vehicle standing on the roadway of a highway is in sub. (8), which provides that the provisions of sec. 85.19, Stats., 'shall not apply to the operator of any vehicle which is disabled while on the highway in such a manner or to such extent that it is impossible to avoid stopping or temporarily leaving such vehicle in such position.' "

In the instant case, Liebenstein's truck was not disabled. Nothing happened that would in the least affect the motor and propelling mechanism of the truck.

It clearly appears that it was practical to park the truck in the driveway leading into the Miller farmyard, keeping the truck within the highway boundary. Liebenstein had a legal right to so place his truck without trespassing upon any private rights of Miller. His failure to do so was a violation of sec. 85.19 (1), Stats., and was negligence as a matter of law.

Appellants claim that in its oral instructions to the jury the court erred in failing to give the first part of sec. 85.19 (1), Stats., which provides:

"No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway of such highway. . . ."

However, the part above quoted was included in the typewritten transcript of the court's charge which the jury took to their juryroom. It is not contended by respondent that the above portion of the statute was given in the oral instructions, but respondent contends that since it was contained in the typewritten transcript which the jury had during their deliberations, no prejudicial error resulted. We think the error in this respect was emphasized by the following col-

loquy between appellants' counsel and the court. The record discloses that at the conclusion of the court's oral instructions the following took place:

"By Mr. Graves [appellants' counsel]: I would like to call the court's attention to the quotation your Honor gave in the instructions from sec. 85.19. It was not complete and I think that another sentence which was omitted is applicable and I now ask that you include that.

"By the Court: What is it?

"By Mr. Graves: 'No person shall park, stop or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway, provided that in no event'—

"By the Court: That section is all right the way it is but that did not give him a right to park his truck on private property.

"By Mr. Graves: The evidence in this case shows he could have parked—

"By the Court: He had no right or license to drive in and park his truck on a driveway.

"By Mr. Graves: I except to that instruction. That driveway is within the public road. He had a right to park his truck within the limits of the highway.

"By the Court: He had no right to go on a private road or on private ground."

We think it obvious that from what the court said the jury could only conclude that Mr. Liebenstein was not obliged, in fact that he had no legal right, to park his truck in the driveway leading into the Miller farm even though it was not necessary in so doing to go beyond the highway boundary. There can be no doubt as to what the court meant in its reply to counsel, because on motions after verdict, in referring to what this court held in *Kassela v. Hoseth, supra,* the court said:

"I cannot believe that the supreme court meant to say that the driver of a truck, finding his truck disabled and necessary to stop had a right to trespass upon private property.

I do not believe that the supreme court means to hold that a driver of a truck could, without permission, drive into a private driveway and there repair his truck, *or that he could drive his truck down in front of the driveway* blocking the passage in and out and there leave the truck pending repairs."

As said above, Mr. Liebenstein would not have been trespassing upon any private rights so long as he kept his truck within the highway boundary. The width of the highway permitted him to do so. There is no evidence that the truck was disabled. It is evident that one or more of the cross chains became loose and their striking upon the underside of the fender caused the knocking which the daughter referred to as "a banging on the truck." For the reasons stated the judgment must be reversed and a new trial granted.

*By the Court*.—Judgment reversed, and cause remanded for a new trial.