GUDERYON, Respondent, vs. WISCONSIN TELEPHONE COMPANY and another, Appellants.   [Two cases.]

*January 13—April 7, 1942.*

216

For the appellants there were briefs by *Lockney, Lowry & Hunter* of Waukesha, and oral argument by *Richard N. Hunter*.

For the respondent there were briefs by *Warren R. Jorgenson* of Hartland and *Jacobson, Malone & Hippenmeyer* of Waukesha, and oral argument by *Richard S. Hippenmeyer* and *Marcus A. Jacobson*.

The following opinion was filed February 10, 1942:

FRITZ, J. The judgments under review are for damages sustained as the result of injury to Mabel Guderyon when an automobile, which she was driving northward on a highway, ran through a cloud of smoke and into a truck which Arthur Teske, an employee of the defendant, Wisconsin Telephone Company, had parked on the east side of the highway. At the time of the accident, a smoke cloud arising from a pile of burning brush was blown by a northeast wind across the highway so as to obscure the vision along the road. The jury found that the collision was caused by negligence of Teske in parking or stopping the truck (1) on the left side of the highway, (2) without leaving a clear and unobstructed width of no less than fifteen feet upon the roadway opposite the truck for the free passage of other vehicles, (3) when it was practical to park or stop off the roadway, and (4) without leaving a clear view of the truck from a distance of two hundred feet in each direction along the highway. The jury also found that Mabel Guderyon was not negligent in operating the automobile with respect to (1) lookout, (2) speed or (3) control and management. Motions by the defendants for a directed verdict and, subsequently, to have the court change the jury's findings in respect to Teske's negligence and the absence of negligence on the part of Mabel Guderyon, and for judgment

on the verdict so amended, and also defendants' motion for a
new trial were denied by the court; and judgment was entered
against the defendants for plaintiff's recovery of damages
assessed by the jury in each action.

Defendants' principal contentions are that there is no evidence to sustain the jury's findings of negligence on the part
of Teske; and that the undisputed evidence clearly shows
that he was not negligent in the matters found by the jury,
but that Mrs. Guderyon was causally negligent, as a matter
of law, in respect to lookout, control and management, and
speed. In passing upon these contentions as to the sufficiency
of the evidence to sustain the jury's findings, it must be given
the most favorable construction in support of the findings that
it will reasonably bear, including all reasonable inferences that
may have been drawn therefrom by the jury in so finding.
So construed the evidence reasonably admits of inferences to
the following effect. On the afternoon of February 18, 1938,
Teske, proceeding south upon the west half of the highway,
drove the truck on to the east side of the roadway and parked
it, facing south, completely on the east half of a nineteen to
twenty-feet-wide black-top or traveled roadway of the highway, about opposite or within six feet north of a place where
Charles Johnson, a farmer, and Francis Sheets, his hired man,
were engaged in cutting and burning the brush. The road
was practically level for seven hundred fifty feet to the
south and for several hundred feet to the north, and the average width of the shoulders, which were level with the roadway,
was two and three-tenths feet on the east side and two and
eight-tenths feet on the west side. The nearest driveways
were, respectively one thousand forty-eight feet to the north,
and three hundred sixty-three feet to the south. There was a
ditch ten or twelve inches deep immediately east of the east
shoulder, and beyond the ditch there was a level meadow upon
which Johnson and Sheets were burning the brush. When
Teske parked the truck, Johnson left his work and stood,

with his hand upon the truck, and discussed with Teske, who remained seated in the truck, the trimming of the trees along the highway so as not to interfere with telephone wires. Meanwhile Sheets continued collecting brush and feeding the bonfire, which within three to five minutes caused a cloud of smoke to blow southwestward from the brush pile, which was about eight feet across and two and one-half or three feet high, across the highway so as to almost completely obscure the view along the highway from the south toward the parked truck. The cloud of smoke crossing the highway was about ten feet wide and eight to ten feet south of the front of the truck. The day was somewhat dark and cloudy, but it was not necessary to have the lights lit. Mrs. Guderyon, in approaching from the south at about twenty-five miles per hour, was driving on the east half of the black-top roadway and, on passing through the cloud of smoke, crashed into the parked truck by striking about three and one-half to four feet of the right part of the front end thereof. Teske testified that when he parked the truck he had an unobstructed view for about eight hundred feet to the south; that he noticed that the smoke from the burning brush pile had started to blow across the roadway for about fifteen seconds before he saw Mrs. Guderyon's car approaching from the south on the east side of the highway; that when he first saw the car she was one hundred feet to the south of him and all he could see through the smoke was the top of the car and about a foot of the windshield, and this condition had existed for at least fifteen seconds before the collision; and that when he saw the car one hundred feet to the south he "tried to shove into reverse, but didn't have time before she hit me," and that there were no skid marks from the Guderyon car that he could see. Johnson, who was standing north of the bonfire, testified that Sheets had thrown some brush on the fire and that it made a puff of smoke that came over just as the Guderyon car came along, and that he did not see the Guderyon car until it was four to six feet

away; but Sheets testified that he saw the car when it turned the curve about five hundred feet to the south and that he watched it all the way up until the collision occurred, excepting that he lost sight of it while it was passing through the smoke.

Defendants' contention that the evidence does not sustain the jury's finding that Teske was negligent in parking or stopping the truck without leaving a clear and unobstructed width of no less than fifteen feet upon the roadway for the free passage of other vehicles thereon, in violation of sec. 85.19 (1), Stats., is based on the claim that under this statute the shoulder on the west side of the road, which was frozen and in good condition, should have been considered as a part of the roadway of the highway, and that so considered there was an unobstructed width of more than fifteen feet upon the roadway opposite the truck. This claim and the contention based thereon cannot be sustained. The shoulders are not to be included in computing the width under the provision in sec. 85.19 (1), Stats., which requires "a clear and unobstructed width of no less than fifteen feet upon the roadway of such highway." In this respect the provision reads:

"In no event shall any person park, stop or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of no less than fifteen feet upon the roadway of such highway opposite such standing vehicle shall be left for the free passage of 'other vehicles thereon;"

and in sec. 85.10, sub. (21) (e), the word "roadway" is defined as being,—

"that portion of the highway between the regularly established curb lines or that portion which is commonly used by vehicular traffic."

Consequently, as the shoulder is not commonly used by vehicular traffic, it cannot be included as part of the roadway

upon which there must be left a clear and unobstructed width of no less than fifteen feet for the free passage of vehicles thereon. The decisions in *United Paper Corp. v. Lietz,* 198 Wis. 278, 223 N. W. 843, and *Long v. Steffen,* 194 Wis. 179, 215 N. W. 892, upon which defendants rely as holding that the shoulder when usable can be computed as part of the highway, are no longer in point. They were decided under former sec. 85.02, Stats., which differed in that the requirement read: "In all cases there shall be left a free and *usable passageway* of at least eighteen feet. . . ." The meaning of the term "usable passageway" as used in this former provision has not the same meaning as the word "roadway," which, as used in sec. 85.19 (1), Stats., is defined in sec. 85.10 (21) (e), Stats., as that portion of a highway which is "between the regularly established curb lines" or "which is commonly used by vehicular traffic." See *Reykdal v. Miller,* 216 Wis. 561, 257 N. W. 604; *Bohlmann v. Penn Electric Corp.* 232 Wis. 232, 286 N. W. 552; *Callaway v. Kryzen,* 228 Wis. 53, 279 N. W. 702.

Defendants' contention that the evidence does not sustain the jury's finding that Teske was negligent in parking or stopping the truck when it was practical to park or stop off the roadway is based upon their claim that it was not practical for a mere temporary stop to park the truck off the roadway by driving to the nearest driveways which were, respectively, one thousand forty-eight feet to the north, and three hundred sixty-three feet to the south, or by driving across the ten to twelve-inch ditch. This claim and the contention based thereon likewise cannot be sustained. Under the evidence as to the nature and weight of the truck and the frozen condition of the east shoulder and the adjacent meadow, which were level except for the shallow and narrow ditch, the jury was warranted in believing that Teske could readily and safely have parked entirely off the roadway by going onto the east

shoulder and partly across the ditch onto the meadow on which Johnson's car was parked. As we have said,—

"The purpose of this law is to keep a highway free from the obstruction of standing vehicles. The requirement in that respect is positive unless circumstances exist which make the moving of the vehicle off the 'roadway of the highway' impractical. The practical necessity for appellant leaving his car upon the concrete portion of the highway did not exist in this case." *Reykdal v. Miller, supra,* p. 564.

"Under that provision, the parking, stopping, or leaving of a vehicle on the roadway of a highway, outside of a business or residence district, is prohibited whenever it is practical to park, stop, or leave such vehicle standing off such roadway. As the only issue in that respect, under that provision, is whether it was practical to park, stop, or leave the grader stand off the roadway, the mere fact that it may have been inconvenient or less advantageous, in point of saving time, or otherwise, to move the vehicle off the roadway, affords no excuse for failing to avoid a condition which obviously was considered such a source of danger to the traveling public that it was expressly prohibited by that safety statute." *Kassela v. Hoseth,* 217 Wis. 115, 119, 258 N. W. 340; *Liebenstein v. Eisele,* 230 Wis. 521, 284 N. W. 525; *Knauf v. Diamond Cartage Co.* 226 Wis. 111, 275 N. W. 903; *Callaway v. Kryzen,* 228 Wis. 53, 279 N. W. 702.

Defendants' contention that there was no evidence to sustain the jury's finding that Teske was negligent in stopping and parking his truck without leaving a clear view of the truck for a distance of two hundred feet in each direction along the highway is based on their claims that when Teske stopped and parked the truck the view was unobstructed for seven hundred fifty-nine feet to the south, and the fire had burned down to coals so that there was no smoke which he could notice; and that the smoke started blowing across the road after he had stopped and but a very few seconds before the crash, after Sheets had raked up some brush and piled it on the fire, which

made a puff of smoke that came across the road, just as the car came along. On the other hand, plaintiff contends that it can reasonably be inferred from testimony given by Sheets that the fire was burning all of the three to five minutes during which the truck was parked and that during all of this time the smoke was crossing the road in quantities sufficient to obstruct the vision of anyone approaching from the south, so as to make it impossible to observe the truck at a distance of two hundred feet; that Teske admitted himself that when he first saw the car about one hundred feet south of him, all except the top of the car and about a foot of the windshield was obscured by smoke, which had started to blow across the roadway about fifteen seconds before he saw the car; and that therefore Teske's negligence in parking the truck on the wrong side of the road was not static but was continuing and active until the time of the collision. Plaintiff's contentions and conclusions in these respects must be sustained. Under the evidence the jury could reasonably believe and find that the truck was parked from three to five minutes before the collision; that while it was so parked Teske could and should have observed, in the exercise of ordinary care, that the fire was burning anew and the smoke was increasing and blowing across the highway so as to obstruct the clear view of the truck from the south; and that because of his failure to promptly move the truck off the east half of the roadway he was causally negligent in stopping and parking the truck there without leaving a clear view along the highway for a distance of at least two hundred feet south of the truck.

Defendants also contend that any negligence found on the part of Teske in parking the car could not have been the proximate cause of the collision, inasmuch as it is clear from the evidence that any such negligence in and of itself would not have been sufficient to cause the injury; that it could only result in the collision by working in conjunction with Mrs. Guderyon's own negligence; and that the accident would have

happened and she would have sustained her injuries even though Teske had not been negligent. In support of these contentions defendants cite *Stacy v. Knickerbocker Ice Co.* 84 Wis. 614, 54 N. W. 1091; *Geuder, Paeschke & Frey Co. v. Milwaukee,* 147 Wis. 491, 501, 133 N. W. 835; *Hendley v. Chicago & N. W. R. Co.* 198 Wis. 569, 225 N. W. 205; *Swinkels v. Wisconsin Michigan Power Co.* 221 Wis. 280, 267 N. W. 1. On the other hand, plaintiff contends that Teske's negligence in parking or stopping on the east half of the roadway under the existing circumstances did not cease when he brought his truck to a stop, but that it was a continuing active negligence and was a substantial factor in causing the harm during all the time that Sheets' activities caused the smoke cloud which was blowing across the highway and until the collision occurred; and that therefore Teske's continuing active negligence because of the wrongly parked truck was a concurrent cause of the collision because of which defendants are liable for the resulting damages. Excepting in so far as Teske's violation in merely parking on his left instead of the right side of the roadway was also found to be a cause of the collision, the above contentions on behalf of plaintiff must be sustained, in view of the principles considered and applied in such cases as *Felix v. Soderberg,* 207 Wis. 76, 240 N. W. 836; *Bunn v. Bucknam,* 227 Wis. 218, 278 N. W. 533; *Butts v. Ward,* 227 Wis. 387, 279 N. W. 6; *Derleder v. Piper,* 239 Wis. 269, 1 N. W. (2d) 146, in which we held that negligent parking or stopping on a roadway under analogous circumstances can be considered a cause of the collision between the parked car and an approaching car, even though negligence on the part of others or the party injured may have operated concurrently in causing the collision. The mere circumstance of parking on his left side, because of which the truck faced southward on the east half of the roadway instead of facing northward, as it would have if Teske had parked it there while driving in that direction, cannot in and of itself be considered

a cause of the collision. If Teske had not violated the provisions prohibiting parking on the roadway without leaving a clear and unobstructed width of at least fifteen feet upon the roadway for the passage of other vehicles, without leaving a clear view from a distance of two hundred feet to the south, and when it was practical to park off the roadway, the mere circumstance alone that he parked on the left side with the truck facing south, could not be considered the cause of the collision. As the violation in this latter respect alone cannot be held to be a cause no question should have been submitted to the jury in that respect.

In relation to Mrs. Guderyon's conduct as she approached and collided with the truck, the defendants contend that under the facts and circumstances established by the evidence she was causally negligent in respect to lookout, control and management, and speed as a matter of law. This contention cannot be sustained in so far as it is in relation to her lookout. There is no evidence as to whether she did or did not maintain a sufficient lookout, or as to what she observed or did not observe but ought to have observed in the exercise of ordinary care as she was approaching the cloud of smoke and place of the accident. Because of her death she did not testify on the trial and in the absence of any evidence whatsoever in relation to her lookout there is applicable the presumption that she was exercising due care for her own safety; and until there is some proof from which it can be inferred that she did fail negligently to keep a proper lookout, there can be no finding that she was negligent in that respect. *Ledvina v. Ebert,* 237 Wis. 358, 367, 296 N. W. 110; *Bohren v. Lautenschlager,* 239 Wis. 400, 1 N. W. (2d) 792; *Smith v. Green Bay,* 223 Wis. 427, 271 N. W. 28. On the other hand, in respect to the speed and Mrs. Guderyon's control and management of the car, there is proof as to which there is no denial or conflict in the evidence that she was traveling at twenty-five to thirty

miles per hour as she approached from the south, and that from the time Teske first saw her about one hundred feet away, he did not notice that she slowed down before the crash. There was also proof that there were no skid marks or any other indication of the application of the brakes and there apparently was no material change in the course or speed of the car as it entered and passed through the smoke and the eight to ten feet beyond until it collided with the truck. Assuming, in the absence of any proof to the contrary on the subject of lookout, that she exercised due care for her safety in that respect, she must have seen the cloud of smoke when she was still at least one hundred feet away and that it was being blown across the roadway in such volume and density as to obstruct the view along the highway in and beyond the smoke. Under these circumstances there was applicable to her conduct in the control and management and the speed at which she continued operating the car, the well-established principle that it is the duty of the operator to drive it at such rate of speed that he can bring his car to a standstill within the distance that he can plainly see objects or obstructions ahead of him; and that if he continues to proceed when he is unable to see because his vision is obscured by smoke, or dust, or darkness, he is negligent. *Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629; *Johnson v. Prideaux,* 176 Wis. 375, 187 N. W. 207; *Fannin v. Minneapolis, St. P. & S. S. M. R. Co.* 185 Wis. 30, 200 N. W. 651; *Leonard v. Bottomley,* 210 Wis. 411, 245 N. W. 849; *Mann v. Reliable Transit Co.* 217 Wis. 465, 468, 259 N. W. 415. As we said in the *Mann Case,*—

"When the situation on a highway is such that one's vision is completely obscured, it is one's duty to slow down or even stop until the cause of such obscured vision is at least in part removed. *Johnson v. Prideaux,* 176 Wis. 375, 187 N. W. 207; *Leonard v. Bottomley,* 210 Wis. 411, 245 N. W. 849; *Pietsch v. McCarthy,* 159 Wis. 251, 150 N. W. 482. Whether

one's vision is completely obscured by blinding lights, dust, or dense smoke seems quite immaterial. Had it not been raining hard at the time of the accident, we should be inclined to hold that the plaintiff was negligent, as a matter of law, in not discovering that the Sprout truck was standing still."

As the above-stated duties clearly appear to have been violated by Mrs. Guderyon in her conduct in respect to the speed and management and control of the car up to the time of the collision, it must be considered also a cause of the collision, and the court should have found her causally negligent in these respects, as a matter of law, instead of submitting these issues to the jury. Because the jury's findings in these respects cannot be sustained, and because of such negligence on her part, there must be a finding as to comparative negligence, and the judgments must be reversed with directions to grant a new trial in each case.

As there may be another trial, it may be helpful to consider defendants' assignments of error in relation to the following matters. Defendants contend the court erred in answering the first question for a special verdict by finding that Teske was negligent in parking or stopping the truck on the left side of the highway. Defendants claim that the words "parked or stopped" used in sec. 85.19, Stats., in prohibiting the parking of any vehicle in several respects may well be construed not to include the prohibition of a mere temporary halt such as was involved in this case. This contention cannot be sustained. Under the express terms of the statute "stopping" as well as "parking" is within the inhibitions thereunder.

Defendants contend also that because the questions "overlapped" the court erred in submitting to the jury separate questions as to whether Teske was negligent in respect to parking or stopping on the left side of the highway; parking or stopping without leaving a clear and unobstructed width of fifteen feet upon the roadway; parking or stopping on the roadway when it was practical to park off the roadway; and

parking without leaving a clear view of the truck from a distance of two hundred feet along the roadway. Although each of these questions related to a somewhat different factual situation, it is true that they were overlapping in so far as each of the factual situations was involved in the final determination of the sole ultimate issue of fact, viz., whether Teske was causally negligent in parking the truck. *Callaway v. Kryzen, supra.* However, to avoid a question which,—if submitted in such omnibus form as not to require the jury to find specifically as to each of the different factual situations claimed to be negligent,—would be defective because it would not be discoverable from but a single answer thereto in what respect the jury found Teske negligent, or whether some jurors thought he was negligent in one respect and some in another (*Matuschka v. Murphy,* 173 Wis. 484, 487, 180 N. W. 821; *Brickell v. Trecker,* 176 Wis. 557, 561, 186 N. W. 593), it was necessary and therefore proper for the court to submit a separate question as to each factual situation which could be found by the jury to constitute a violation of a provision in a safety statute relating to parking, and also constitute a cause of the collision. Consequently, the submittal of the separate questions was not error and cannot be deemed prejudicial. Prejudicial error could have resulted only if the jury in subsequently determining the issue of comparative negligence had been permitted, in comparing the negligence of the parties, to consider as cumulative the several separate respects in which it found Teske causally negligent in parking. As we said in *Callaway v. Kryzen, supra,* p. 59, overlapping issues of ultimate facts, which related to the same thing "may not be considered as cumulative by the jury in comparing the negligence of the parties." The jury must be properly instructed to that effect when questions, which are but cumulative as to such an ultimate issue, are submitted.

Defendants contend further that the court's instruction to the jury "that it is presumed that Mabel Guderyon at the time

in question acted for her own safety. In considering your answers to question three you may consider the natural instinct of self-preservation" was erroneous and prejudicial because it was not qualified by informing the jury as to the limited application and effect of the presumption in the respects considered necessary in *Smith v. Green Bay, supra.* There was no request by defendants on the trial for any such qualifying instruction. However, the instruction as given was incomplete and if any instruction is given in regard to the presumption the jury should be instructed also as to the limited application and effect thereof.

*By the Court.*—Judgments reversed in each action and cause remanded with directions to grant a new trial.

A motion for a rehearing was denied, with $25 costs, in one case only, on April 7, 1942.