STATE EX REL. OAK PARK COUNTRY CLUB, Petitioner, vs. GOODLAND, Municipal Judge, and others, Respondents.

*January 15—February 9, 1943.*

For the petitioner there was a brief by *LaFrance & Edwards* of Racine, and oral argument by *Oscar M. Edwards.*

For the respondents there was a brief by *Flynn, Storm & Greenquist,* attorneys for Jessie Barton, and *Wilbershide & Baumblatt* of counsel, and by *Thompson, Myers & Helm,* attorneys for Richard Metz, all of Racine, and oral argument by *L. J. Baumblatt, Gerald T. Flynn,* and *Samuel Myers.*

BARLOW, J.   The record shows, in addition to the facts above stated, that on the 30th day of October, 1939, relator entered into a written contract with Richard Metz to act as golf professional for the period from April 15, 1940, to November 1, 1940.   The contract provided that Metz should operate, at his own expense, an up-to-date golf shop for the repair and storage of members' clubs and the sale of supplies, and that he was to give golf instruction to individual members at reasonable prices and rates; that he should supervise, when requested, regular or special programs of golf play; that he should supervise golf caddies, and attend the club personally during reasonable hours during the period of his employment, except Monday of each week, and also except that he had the privilege of attending golf tournaments for not more than forty days.   The contract further provided that Metz should employ, at his own expense, an assistant professional, to be approved by the chairman of the grounds committee, a competent club maker, and also a cleaner; that Metz was to receive a fixed salary for the period, and in addition be entitled to all the receipts derived from the operation of the pro shop, including the sale of clubs, balls, and supplies.   The board of

governors reserved the right to terminate the agreement in the event Metz became unfit to serve as professional or failed to perform his duties to the satisfaction of the board, and the board also reserved the right to determine the reasonableness of any charge made by the professional to any member of the club.

On the 14th day of October, 1940, which was a Monday, Metz decided to drive to Racine, Wisconsin, to shop for supplies to retail at the pro shop. By some arrangement Laffoon drove his car and Metz rode with him. Both Laffoon and Metz individually owned their respective automobiles. Metz purchased some merchandise at Racine. On the return trip, and while still in Racine county, Wisconsin, Laffoon's car was involved in a collision with the car driven by Frank Barton, Sr., which resulted in the death of Barton.

It is undisputed that the defendant Metz was employed by the relator and that the defendant Laffoon was employed by Metz with the approval of the chairman of the grounds committee of the relator. However, we must examine the contract to determine the relationship between the defendant Laffoon and the defendant Oak Park Country Club. Laffoon was employed and paid by the defendant Metz. He owned and operated his own automobile. He was not required to own and operate an automobile under his contract; neither was the defendant Metz. Metz operated an independent business known as the "pro shop." He purchased and paid for his own merchandise. He was the owner of this merchandise and at the end of his contract he had the right to remove it. The relator was in no way responsible for the payment of any merchandise that defendant Metz might purchase and offer for sale. Laffoon was in no way engaged in the merchandising business; he was an employee of Metz. The relator had no control over his actions or the services that he was to perform. Neither Metz nor Laffoon was required to be at the club on Mondays. This accident occurred on a Monday.

Defendant Metz received the entire profit or suffered any loss in the operation of the pro shop. The amount of money that he made depended upon his ability as a buyer and the amount of merchandise he could sell, together with other sources of income from the pro shop. The relator received none of the income or profit from the operation of this shop. It is true the business was conducted in a portion of a building owned by the relator. However, it assumed no responsibility for the operation of the pro shop, and merely provided in the contract that the defendant Metz was to operate such shop at his own expense.

In the case of *State ex rel. J. A. Sexauer Mfg. Co. v. Grimm,* 217 Wis. 422, 425, 259 N. W. 262, this court said:

"It would be more exact to say that no contractual relations whatever existed between France and the relator as to the operation of the automobile."

This is consistent with the decision in the case of *Kassela v. Hoseth,* 217 Wis. 115, 258 N. W. 340.

The requirements necessary for this court to exercise its superintending control are fully set forth in the following cases: *State ex rel. Fourth Nat. Bank of Philadelphia v. Johnson,* 103 Wis. 591, 79 N. W. 1081; *Petition of Pierce-Arrow Motor Car Co.* 143 Wis. 282, 127 N. W. 998; *Petition of Inland Steel Co.* 174 Wis. 140, 143, 182 N. W. 917.

In the last case, the court said:

"In cases involving the validity of the service of summons, extraordinary hardship is inherent when such service is held valid by the trial court, because the defendant has to suffer a default judgment in order to test the question of the validity of the service, or else apply for a writ of prohibition, there being no appeal from an order holding the service valid, and the rule of this state being that if appearance is made on the merits the question of jurisdiction is waived." Citing *Rix v. Sprague C. M. Co.* 157 Wis. 572, 147 N. W. 1001; *Corbett v. Physicians' C. Asso.* 135 Wis. 505, 115 N. W. 365.

There was neither agency nor contractual relations between the defendant Laffoon and this relator whereby it can be said that it used or operated a motor vehicle over the highways of Wisconsin under the provisions of sec. 85.05 (3), Stats. The relator should not be required to meet the merits until it is properly in court.

*By the Court.*—Let writ of prohibition issue as prayed for in the petition.